ROGERS, &c.
*vs*
DARNABY.

---

COVENANT.

*Case* 47.

October 21.

# Rogers, &c. *vs* Darnaby.

ERROR TO THE BOURBON CIRCUIT.

*Sheriffs. Executions. Replevin.*

JUDGE BRECK delivered the opinion of the Court.

DARNABY, as relator, brought this action upon the official bond of Rogers, as Sheriff of the county of Bourbon, and recovered judgment against him and his sureties for $382 17, from which Rogers has appealed to this Court.

The point upon which the case turns will very clearly appear by a statement of the facts, about which there is no controversy, and of the law as expounded by the Court upon the trial to the jury.

The facts are these: In 1838, Hedges, as Sheriff of the county of Bourbon, levied an execution from the Fayette Circuit Court, in favor of Purnell Bishop and against James M. Coons and others, upon three slaves, as the property of Coons. In virtue of a writ of replevin, sued out by —— Johnson against the Sheriff and Bishop, the slaves were taken out of the possession of the Sheriff and delivered to Johnson. Upon the trial of the action of replevin, a verdict was found for the defendants, and a judgment for the return of the slaves. Johnson appealed to this Court, when, on the 22d November, 1839, the judgment was affirmed. On the 28th of the same month an execution issued upon a judgment of the Fayette Circuit Court, in favor of Darnaby, the relator, and against said James M. Coons, to the Sheriff of Bourbon. On the 12th of December following, Rogers, as Sheriff, levied this execution upon the three slaves, upon which the execution of Bishop had been levied by Hedges, the former Sheriff, and which had been taken out of his possession under the writ of replevin in favor of Johnson. Rogers subsequently summoned a jury to try the right of property, and whether said slaves were subject to the execution of Darnaby.

The jury returned, after reciting the previous levy by the former Sheriff, and that further proceedings were stayed by replevin, that the slaves were not subject to the execution of Darnaby, but were subject to the execution of Bishop, and thereupon the Sheriff released the slaves and returned the facts of the case: that he had levied upon the slaves, advertised them for sale, and being in dispute, he had summoned a jury who had found them not subject to the execution, and, therefore, no sale was made.

Upon motion, *ex parte*, the return was afterwards quashed.

As it does not affect the rights or liabilities of the parties we have deemed it unimportant to state, that both the old and the new Sheriff acted by deputy.

The slaves were subsequently, in June, 1840, sold under an execution upon Bishop's judgment, and also one in favor of Trimble by the Sheriff of Fayette, and after discharging the former execution, the residue of the pro-

ceeds, being three hundred and forty one dollars, was applied to the latter.

It was proved that the slaves, when Bishop's execution was first levied by Hedges, were the property of Coons, and had so continued till their sale; and that they were in Bourbon county in possession of Johnson during the time Darnaby's execution was in the hands of Rogers.

Upon these facts, the question arises upon the pleadings as to the liability of Rogers and his sureties upon the official bond of the former as Sheriff.

The Court instructed the jury, "that if the slaves belonged to said Coons when Darnaby's execution was in said Sheriff's hands, and were then in Bourbon county, that they were subject to Darnaby's execution, and that it was the duty of the defendant, Rogers, to have levied said Darnaby's execution on said negroes, subject to the prior lien of said Bishop's execution, and to have held them by such levy, and he should have so returned on said execution; and not having done so, his return, as made, was insufficient and false, and so far as the relator was injured by the conduct of said Rogers in so doing, the defendants were responsible in this action, and that the plaintiff was entitled to recover to the extent of that injury, not exceeding what said negroes were worth, after deducting the amount of said Bishop's execution."

*The instructions given by the Circuit Court.*

And the Court refused to instruct the jury, as moved by the defendants, "that the defendant, Rogers, had no right to levy Darnaby's execution on said slaves, until the levy of Bishop's execution thereon was released, or the execution satisfied; and that in virtue of said levy, said slaves were in the custody of the law, and not subject to be taken under execution against said Coons."

*Instructions refused by the Circuit Court.*

Whether the Court was correct in thus ruling the law, is the only question for our determination. It is a question, we apprehend, which has not hitherto been directly decided or presented for the consideration of this Court, nor have our researches for precedent or authority elsewhere been successful in entirely freeing the subject from doubt and difficulty.

In considering the question, these positions, we think, may be assumed as settled:

1st. That the old Sheriff, Hedges, in virtue of the levy of Bishop's execution, was vested with a special property in the slaves, and such a property as would enable him to maintain trespass or trover. It is even laid down in *Clerk* vs *Withers*, (1 *Salkeld*, 323,) that by the seizure of the Sheriff under execution, the property was divested out of the defendant and in abeyance. But that Hedges had acquired, in this case, a special property in the slaves and was entitled to their exclusive possession and control, there can be no question, we apprehend, and it is most obviously proper that such should be the case, as he was answerable for their loss or any injury to them through his neglect. Under the English practice, a Sheriff could not formerly return, that goods upon which he had levied had been *rescued*.

2d. That the old Sheriff had the same property in the slaves, the same right to their possession and control after as before the termination of his office, and of course, that he was to the same extent responsible.

3d. That of the final termination of the action of replevin, it was the duty of the old Sheriff to obtain possession of the slaves and sell them in discharge of Bishop's execution. To do this he required no additional authority. The authority acquired under the original levy was ample and undiminished, and *quo ad hoc*, he was still Sheriff.

The rule is, that "the same person who begins an execution shall end it;" and hence, according to the English practice, when a Sheriff had seized goods under execution, and before he made sale, was discharged from office, upon his failure to sell and bring the money into Court, a writ of *distringas nuper vicecomitem*, as it was called, was issued to the new Sheriff, requiring him to distrain upon the old, that he might sell the goods and bring the money into Court, or sell and pay over the money to the new Sheriff, that he might bring it in. This writ conferred no new authority, but was merely to compel the old Sheriff to act under the authority which he already possessed. In support of these positions the case in Salkeld referred to; *Wilbraham* vs *Snow*, (2 *Saunders*, 47, *note b*;) 2 *Lord Raymond*, 1075; *Watson on office of Sheriff*,

VOL. IV. 31

---

ROGERS, &c.
*vs*
DARNABY.

A Sheriff, by virtue of levy of an execution on personal property, is entitled to exclusive possession thereof.

A Sheriff's right to the exclusive possession of property levied on, is not impaired by his going out of office; nor are his powers and duties in relation thereto in any manner changed.

If property be taken from the possession of the Sheriff by writ of replevin, yet if the decision on that writ be in his favor, it is his duty to obtain the possession, sell the property and pay off the execution, tho' his term of office has expired.

(7 *Law Library*, 136-8; *Ibid*, 141,) may be cited as authority.

We are of opinion, it may be further assumed and as resulting from the foregoing positions, that the old Sheriff and the new, as to their respective rights, duties and liabilities in reference to these slaves, should be regarded as different and distinct officers, neither having the right to the possession nor the right to the slaves in virtue of the authority of the other, and neither having the right in virtue of his own authority, to sell in discharge of the execution or claim in the hands of the other. If these positions are correct, and we are very clearly of opinion they are, would the slaves have been subject to Darnaby's execution, while in the hands of Rogers, provided Hedges had, at the time, been in possession? Could Rogers have rightfully *levied upon and held them?* We find no authority for such a levy. The relative attitude and rights of the parties would have been the same as if Hedges had, as a different officer, levied upon and held them under a living execution. As between different officers, the first levy holds, and a subsequent levy cannot be sustained, except upon the ground that the first was fraudulent or otherwise invalid. Rogers, under the circumstances, would have been a trespasser, if he had deprived Hedges of the possession, and the law does not require an officer to levy upon goods or personal property without the right of possession and control thereof.

If then the slaves would not have been subject to Darnaby's execution while in the hands of Rogers, had they at the time been in possession of Hedges, does the fact that they were then in possession of Johnson, who had taken them in replevin, vary the case? The replevin case had there been finally disposed of; the judgment for restitution of the slaves to Hedges was in full force; he was entitled to their immediate possession and it was the duty of Johnson and any other person, in whose possession they might be, to have surrendered them. The replevin, as was decided by this Court in the case of *Ferguson* vs *Williams*, (3 *B. Mon.* 303,) was no abrogation of the levy—it still continues in full force; Hedges was not thereby absolved from responsibility, nor was his author-

ity or power to sell the slaves in discharge of Bishop's execution impaired. Had a writ issued upon the judgment for restitution, it would have been the duty of the Sheriff to have delivered them to Hedges. They were appropriated, by law, to the discharge of Bishop's execution, and for that purpose and till that was done, the right of property and possession, as to Coons or any execution against him, was paramount in the old Sheriff; and Rogers, under Darnaby's execution, had no right to resist or obstruct him in obtaining possession of the slaves, or to embarrass him in the sale thereof. A conventional arrangement between the old Sheriff and the new, might be made, in a case like this, for the benefit of the junior execution, but, *stricti juris*, we think the new Sheriff had no right to interfere without the consent of the old.

The finding of the jury, summoned by Rogers, to try the right of property, we have not deemed necessary to consider, and especially as it does not appear to have been relied upon on the trial. From any thing in the record, there was no ground for doubt or controversy as to the right of the old Sheriff to take the slaves and sell them, for the discharge of Bishop's execution. Whether they would sell for more than would discharge that execution was a question which Rogers was not required to decide.

From the view which we have taken of the whole case, it results that the Court erred in the instruction given to the jury, and also in refusing the instructions as moved by the defendants, and consequently in overruling the motions for a new trial.

The judgment is, therefore, reversed and the cause remanded, for a new trial consistent with the principles of this opinion.

*Harlan & Craddock and Hanson* for appellants: *Owsley & Goodloe* for appellee.