## WOOD, JOHNSTON & BURRITT vs. JOHN RULAND.

A recorder is not liable for giving a false certificate as to the title of property, unless such certificate be made fraudulently, or with a knowledge of its falsity.

## ERROR to St. Louis Circuit Court.

GAMBLE & BATES *for Plaintiff in Error.*

For the plaintiffs in error it is insisted that the principles upon which a person undertaking, without reward, to do an act which he was under no obligation to perform, is held bound by law for damages occasioned by his negligence, as in Coggs vs. Bernard, 2 Lord Raymond 909, applies to the present case.

And that there need be no other connexion between the defendant, and the act of Strother, in consummating his fraud, to make the defendant liable, than the wrongful act of the defendant in giving such certificate, as in the case of the Squib. 2 Black. R. 892.

SPALDING & TIFFANY, *for Defendant in Error.*

### POINTS AND AUTHORITIES:

I. The instruction given on the trial was correct, as it merely puts it to the jury to require proof of a material allegation of the declaration. 1. That the allegation that the defendant knowingly and fraudulently made a false certificate, is a material one and must be proved, is apparent from the nature of the count, and from the following authorities: 2 Stark. Ev. 466, 467, 470; 3 Monroe's Rep. 218; 2 Bibb. 618; 12 East. 638, (note.) These cases and many others that might be cited, show that in declaring on a false warranty it is not necessary to allege or prove a *scienter*, but in declaring on the *deceit* it is necessary to allege the *scienter*, and prove it on the trial, &c. See also Chandler vs. Lopus, in Smith's leading cases 77, (45 Law Library 144,) in notes, that the *scienter* must be averred in the declaration *in tort*, on a false warranty and proved; and if not averred cannot be proved. But, secondly, no motion was made for a new trial, and therefore the Court will not review the questions arising on the trial of the issue of not guilty.

II. The demurrer was properly overruled, because the additional count was bad in law, as it sets forth no cause of action. 1. The additional count charges that the certificate was *erroneous* and

*false,* not through the *fraud* or *knowledge* of Ruland, but by his *carelessness* and *negligence.* 2. The charge in the count, therefore, is that he made a false representation as to the title of that property, in writing, not *knowingly* and *fraudulently,* but by *carelessness* and *inattention.* 3. This count charges him with no statutory malconduct, as the acts in force did not make it his duty to give any such certificate; which certificate was not, therefore, an official act. Rev. Code of 1835, page 524, act establishing recorder's offices, and prescribing the duties of recorders. Ibid p. 270, §14, are the fees allowed to recorders, among which there are none for *searches,* and section 33 inflicts penalties for charging where not allowed by law. Acts of 1836-7, p. 62, are fees allowed to clerks of circuit courts for *searches of records,* but this does not apply to recorder's offices, as the provisions are distinct and separate, in the statutes, for the two offices. Rev. Code 1825, p. 288, fees are allowed to recorder for search, and also in Geyer's Digest, p. 189. 4. But for false representations no action lies unless the representations were intentionally false. If they were *bona fide* made, the party is not liable, though guilty of negligence and carelessness. 3 Term Rep. 51, Pasley vs. Freeman, is the leading case as to false representations. 2. East's Rep. 92. The defendant asserted that another person's credit was good from *his own knowledge.* Held that no action would lie if he spoke *bona fide,* as the foundation of the action is *fraud,* (vol. 21 and 42 Law Library,) 8 John. Rep. 23. Actual fraud or intention to deceive is necessary in such action. Rashness or indiscretion will not be sufficient. 6 Cowen 346; 1 Const. Rep. 1. To entitle plaintiff to recover in an action of deceit, fraud and damage must concur; and there must be some connection between the party doing the act, and the one suffering the injury. Chandler vs. Lopus, see Law Library, 17 vol. p. 61, and 41 vol. p. 145, in the notes to this case, where the doctrine as to false representations, is laid down that *scienter* knowledge of the falsity of the representations is necessary. (42 vol. Law Library 112-13-14; 2 vol. Smith's leading cases 70, in notes.)

III. The present case is to be governed by the doctrine applicable to false affirmations. 1st. It is merely a false affirmation *written,* and putting the official seal to it does not alter its character. 2d. It is thus considered in the only case analagous to it which I have been able to find. 11 Wend. R. 545. Unless there be fraud or evil intent, case will not lie against a justice of the peace, who by negligence or carelessness gives erroneous information as to the amount of a judgment rendered by him to the party about to prosecute an appeal, by means whereof the appeal is lost. 13 Ohio R. 157, Ramsey vs. Riley, Recorder, &c.

IV. This case is not analagous to that of voluntary bailees or agents, without reward, with which it is compared by counsel of plaintiff in error. Lord Raymond 909, Coggs vs. Bernard, is the leading case of this class. See 41 Law Library 158, Smith's leading cases and notes. 1st. That class of cases so far as decisions have been generally made, consists of bailments, undertakings to keep property for another, or do something respecting it, without reward; and the decisions make a liability in such case only in case of gross negligence. 2d. The present is not such a case. It is not the undertaking of one person to do the business of another, but is merely an attempt to furnish information by a person supposed to have it, who was mistaken. 3d. But even in such cases an agent without reward, is not required to possess all the skill requisite for the discharge of the commission undertaken. 1 H. Black. 158.

*Statement of the case adopted by the Court, and opinion by* NAPTON, J.

Wood, Johnston & Burritt, a mercantile firm in the city of New York, brought an action of trespass on the case *in tort* against John Ruland, the clerk and ex officio recorder of St. Louis county. The suit was commenced 28th October, 1840. The declaration originally contained two counts, which alleged with slight variations that one Reuben M. Strother

procured the plaintiffs to accept his bills to a very large amount, on his making to them a deed of trust on a lot and house in St. Louis, to indemnify them; and that by way of inducing them to take said deed, and accept said bills, he showed them a certificate of said Ruland, under his hand and the seal of his office, in the following words :

STATE OF MISSOURI, } ss ·
   County of St. Louis, }

I, John Ruland, clerk of the circuit court, and ex officio recorder within and for the county aforesaid, certify that I find upon the records of my office a deed made by Thomas J. Stewart to Reuben M. Strother, in fee simple, for a house and lot in the city of St. Louis, the lot being one hundred and fifteen feet front on Eighth street, by one hundred feet more or less; and I further certify that I have examined the said records of my office, from the third day of June, eighteen hundred and thirty, to this day, and find no no incumbrance whatever upon said property.

   In testimony whereof, I have hereunto set my hand and affixed the [L. s.] seal of said Court, at office in the city of St. Louis, this twenty-sixth day of October, eighteen hundred and thirty-eight.

      JOHN RULAND, Clerk and ex officio Recorder.

Both counts allege that relying on the truth of this certificate, they accepted the bills of Strother, on his pledging the lot and house to reimburse their advances; and that those acceptances amounted to nine thousand dollars; and Strother being indebted to them in that amount, which they had to pay, they sold the lot and house under their deed of trust, and it brought only a thousand dollars, or thereabouts, and that the reason why it did not bring more was the fact of a mortgage, which encumbered said lot, dated 28th October, 1836, executed by Thomas J. Stewart, the then owner of said house and lot to one James Clendening, for the sum of $5,600, payable four thousand dollars in five years from the date of said mortgage, and the residue in five equal annual instalments from said date, which mortgage was recorded on the 2d January, 1837. Those counts then proceed to allege formally that the defendant, "well knowing that the said mortgage was of record as aforesaid, and still unsatisfied and unredeemed, but contriving and fraudulently intending to deceive and injure the said plaintiffs, falsely and fraudulently signed, and gave and delivered the said certificate to the said Strother, on the 26th day of October, 1838," &c.

The plea of not guilty was filed to these counts; when the plaintiff filed an amended count, based on the same facts. This count differs from the others by alleging that the defendant, by mere *carelessness* and *neg-*

10

*ligence* made and delivered the certificate, and does not charge a *scienter.*

A plea of not guilty was filed to the additional count, and also a special plea setting forth that before the said certificate was given, to-wit, on 3d June, 1837, said Strother and wife made a deed of trust on said lot to one Evans, trustee, for the purpose of securing the payment of said money, mentioned in the said mortgage, to Clendening, and that afterwards on the 29th September, 1838, made his deed of release of said tract, stating that *all its conditions and stipulations had been complied with,* which was duly acknowleged and recorded in the same year, by which release, he, said Evans, conveyed said lot to said Strother, and discharged it from the trust. This plea was demurred to, and on the argument of the demurrer, the Court held the count bad, and for that reason overruled the demurrer.

A trial was afterwards had on the two original counts, upon the plea of not guilty. The plaintiff gave in evidence the certificate of Ruland, copied above, under the seal of the Court; also the record from the recorder's office of St. Louis county, of a mortgage of T. J. Stewart to J. Clendening, dated the 28th October, 1836, on a lot in St. Louis, forty feet in front on Eighth street, by one hundred feet, more or less, in depth on Washington Avenue, and on which was a two story brick dwelling house, being part of a larger lot conveyed on that day, by said Clendening, to said Stewart; which mortgage was conditioned for the payment of a note of that date of said Stewart to said Clendening, for $4000, in five years, with interest from date, at eight per cent. per annum, interest payable annually. The mortgage was duly acknowledged on the 29th October, 1836, and was filed for record on the 23rd Nov'r, 1836, and actually recorded on 2d January, 1837, in book Y, page 477. The original index of the recorder's office was produced and given in evidence, showing that this mortgage was correctly indexed as being at page 477 of that book. The plaintiffs further proved by depositions taken in New York, of the clerks of plaintiff, that R. M. Strother drew on the plaintiffs, who accepted, for the sum of $7,890, all which acceptances the plaintiffs paid, and that the only credit to which Strother was entitled, was the sum of $918 50, or thereabouts, being net proceeds of the sale of the lot and house by the trustee, John Wood; that said acceptances were given in March and April, 1839, and were paid during the summer of that year; and that the plaintiffs were merchants doing business in the city of New York; that the trustee in said deed of trust, John Wood, sold the property, the house and lot, according to the deed

of trust, on the 12th September, 1839, for $1000, which paid expenses, and left the above balance of $918 50 as a credit as aforesaid.

The said deed of trust was also read in evidence, dated 28th February, 1839, made by R. M. Strother and wife to John Wood, trustee, for the benefit of plaintiffs, to secure all his indebtedness and liabilities to them, in which was conveyed a lot in St. Louis, one hundred and fifteen feet front on Eighth street, by one hundred feet, more or less, deep, being same premises conveyed by T. J. Stewart and wife to R. M. Strother, by deed of October 28th, 1838. This deed contained an authority to sell on six week's notice, in New York city, if Strother should make default in the payment of any claim or demand of the plaintiffs on him. This deed was filed for record on 30th March, 1839. It was further proved by plaintiffs that soon after the sale of said property, the acceptances taken up by the plaintiffs were sent to Thomas Skinker, of St. Louis, in order to obtain a settlement from Strother. Those acceptances were delivered to Strother on his executing his note for $9,104, on which he confessed a judgment in favor of plaintiffs on the 18th November, 1839, in the St. Louis Circuit Court. An execution on this judgment proved unavailing, and Strother having been arrested on it, took the benefit of the insolvent act. A stay of execution on that judgment was given till 1st May, 1840. Skinker further stated that plaintiffs did not request him to examine the title of said lot, prior to the acceptance of said bills of Strother, and that no such request was made to him until May or June, 1839. Plaintiffs then examined said Strother as a witness, who testified that he purchased the lot described in said certificate, in 1837, and gave his notes to Stewart therefor; that he paid the first note, and gave a deed of trust to A. H. Evans, as trustee, to receive the balance; he afterwards went to Evans and requested him to release the deed of trust, giving him evidence that he had paid the debt, and accordingly a release was executed by said Evans. He further stated that he requested Ruland to give him a certificate as to the title of the property, which Ruland said should be done; and that he called the next day and the certificate was not made, Ruland saying that the clerks were all busy as it was just before Court; that Ruland then made the examinations of the record himself, he (Strother) remaining in the office while he did it, and he then gave witness the certificate, which he took and went immediately to a boat that was waiting for him, and thence to Natchez and New Orleans, which was in October, and in January he went round to New York, where he arrived early in February, and then called on the plaintiffs, with one of whom, Wood, he had been previously acquainted

in Virginia, and had had considerable business; after some negotiation, the plaintiffs agreed to accept for him, on the security of the property mentioned in the certificate, on condition that Mr. Skinker should approve the security. The certificate was exhibited to the plaintiffs. It was agreed that Skinker should investigate and approve the security on the return of Strother to St. Louis, that he should be satisfied on the subject of the security, and then they were to accept to the amount of $10,000. He stated that the lot of forty feet, embraced in the mortgage, would include the house and improvements on the lot he purchased from Stewart. He said further, that Ruland at the time that he gave said certificate examined the books himself, and he, Strother, remained in the office while he did it; that the deputy clerks were busy, and that was the excuse given why the examination had not previously been made; that no conversation took place between him and Ruland at the time of giving the certificate, and no person knew what was the object of witness in getting the certificate; that the office was full of persons at the time; that he, Strother, wanted the certificate for the purpose of getting security, but no person knew, nor did he himself then know that he would go to New York at all; that plaintiffs had no other security for their debt, though he believes that they would have made him limited advances without any security. He further testified that he had no acquaintance before or since giving the certificate, with Ruland, except a mere passing acquaintance; that Ruland had no acquaintance with the plaintiffs, nor they with him, so far as he (Strother) knew; when the certificate was shown to plaintiffs, the name of *Ruland* was not mentioned. That he (Strother) had never been in Ruland's office before he applied for said certificate; that he did not say any thing to Ruland about incumbrances; that he did not think that Ruland was prompted by any interested or other motive to make an erroneous certificate; that the certificate was obtained at his (Strother's) instance alone.

The deed from T. J. Stewart to Strother, was given in evidence by plaintiffs, dated 3d June, 1837, conveying the lot of one hundred and fifteen feet by one hundred feet, for $11,354 21, which was recorded 12th September, 1837.

The defendant Ruland gave in evidence the deed of trust from R. M. Strother to A. H. Evans, to secure the payment of the purchase money of said lot, amounting as aforesaid to $11,354 21, as follows, viz: To pay the notes mentioned in the mortgage from Stewart to Clendening, and the balance to pay to said Stewart; for which also notes were given; and it was provided that said deed should be released when all of said notes

were paid.   This deed was dated 3d June, 1837, and filed for record on the 7th of the same month.

Defendant also gave in evidence a deed of release, dated 29th September, 1838, executed by A. H. Evans to said Strother; reciting said deed of trust, and stating that the conditions and stipulations in said deed had been fully complied with by the said Reuben M. Strother, and releasing and quit claiming said property to Strother, which was duly acknowledged and was filed for record on 2d October, 1838.

This was all the testimony.   The Court then, at the instance of the defendant, gave the following instruction, which was excepted to by plaintiffs: "Unless the jury believe from the evidence that the defendant knew at the time he made the certificate, given in evidence, that it was false, they are bound to find for the defendant."

A verdict was found for defendant.   There was no motion for a new trial.

The third or additional count, which was held bad on demurrer, sets forth the facts, substantially as in the others, of the making the certificate by Ruland, then clerk of the circuit court and ex officio recorder, and of the delivery of it to Strother, and that Strother, by means of said certificate, procured the plaintiffs to accept from him a deed of trust of said house and lot, in trust, to sell the same to indemnify the plaintiffs, the indebtedness and default of Strother, and sale of said lot for $1000, and the existence of said recorded mortgage, and of its being of record before the making of said certificate, and an incumbrance on said lot.   This count then alleges "that by mere negligence and carelessness the said defendant made and delivered to the said Strother, the certificate aforesaid, &c., and that by means of that carelessness and negligence, they, the said plaintiffs, have suffered damage to the amount of $8000, &c.

The only question in this case is, whether the defendant, who was clerk of the Circuit Court of St. Louis county, and ex officio recorder, is responsible in damages for the false certificate given by him in relation to the condition of Strother's title, without an averment and proof that such certificate was fraudulent as well as false.   The count, to which there was a demurrer, placed the liability of the defendant upon the allegation of negligence and carelessness, without averring any *scienter*.   The case of Coggs vs. Bernard, is relied on to sustain this count, and the present case is likened to that of unpaid agents, who undertake to keep, or carry, or perform something, and whose responsibility in case of loss is fixed by gross negligence. · If the present could be regarded as a case of bailment, in which the defendant is supposed to have undertaken to look into the

title of Strother, at the instance of said Strother, it is difficult to perceive upon what principle any other than Strother could maintain the suit. Viewing the action in this light, might we not also hesitate to hold a clerk or recorder responsible for even ordinary skill in ascertaining the legal effect of conveyances and reporting how far they constituted incumbrances upon real estate?

But it is quite apparent that the third count does not go for damages occasioned by gross negligence, as in case of gratuitous baillees. The case is one of false representation, and must fall within the principle of the case of Pasley vs. Freeman. That case settled the doctrine that false affirmations, occasioning damage, to constitute the ground work of an action, must also be fraudulent, or made with a knowledge of their falsity. The gist of the action is the fraud, and the affirmation is the means by which the fraud is effected.

The case of Wickward vs. Bryan, (11 Wend. 546,) is quite analagous to the present. The Court there held a justice of the peace not liable for negligence and carelessness in giving erroneous information as to the amount of a judgment rendered by him, whereby an appeal was quashed for variance between the amount of the judgment specified in the appeal bond and in the justice's return. This was upon the ground that the statement made by the justice was not an official act, for which he was responsible for an unintentional mistake; though it was unquestionably proper for the justice to give the information and give it correctly. So in the present case, it was clearly the duty of the clerk to afford every facility for searching the records in his office, and if he chose to perform the search himself, it was proper that he should do it diligently and report correctly. Yet it is a service for which he is not allowed any fee by law, and it is not a duty imposed upon him by any statute. In making this search himself, he does not make himself any more responsible for its accuracy, than any other person would who might make it at the request of the one who desires the information.

The judgment of the Circuit Court is affirmed.