Edward' H. East, Special Judge,
delivered the opinion of the Court.
One execution was issued by a Magistrate against McKoin & Bayley, July 18, 1860, returnable the 12th day of August; two were issued on the 9th of August, returnable on the 8th of September; five were issued on the 10th day of August, returnable on the 9th of September, 1860; two on the 17th day of August, returnable on the 16th day of September, 1860; and one on the 19th of August, returnable on the 18th day of September, 1860.
The three first, purport to be levied on the 9 th of August; the five succeeding, to be levied on the 10th of August, 1860; and the three others, on the days of their issuance, respectively.
*225 These executions all came to the hands of three officers of Montgomery County.
The defendants owned real estate — also, a stock of goods, consisting of furniture, etc.
There was also in the hands of the Sheriff of said county, executions issued from the May Term, 1860, of the Circuit Court, for upwards of $14,000, against the same defendants, and returnable to the September Term, on Monday, the 10th.
The Sheriff levied the court executions on all the real and personal property of the defendants, and left the personal property in the hands of the clerks in the store; and the same remained in their hands until the 8th day of September, when the defendants conveyed' all their estate to a trustee, to secure money borrowed to pay the debts held by the Sheriff, and other debts, to above $40,000. On the 11th of September, the officers holding the executions from the Justice’s court, went to the house of one of the defendants and told him they had levied upon the goods in the store before the conveyance in trust, was made, or rather, had back-levied after the Sheriff; and the defendants in the execution sent for complainants, who were beneficiaries under the conveyance in trust, and the same thing was repeated to them, and they procured to go on a delivery bond. They now file their bill, and allege that they were deceived, and thought the levies had been made as represented; and that the whole transaction was a fraud, based upon falsehood; that no levies were ever made in fact; that ’the defendants in the execution had *226 possession of the goods purported to he so levied upon, all the time, and by themselves and clerks, had been selling the same.
The proof is clear, that, if these officers had levied, as their returns purport, no one ever knew it — neither the defendants in the executions or the clerks. And on the day (11th of September) that they demanded delivery bonds, it will be seen that one of the executions had been functus officio one month; seven had been functus officio three days; and the remaining three had a few days to run; and their action can be characterized only as indicating both great “delay and rapidity.” These eleven executions are for several thousand dollars, and all purport to be levied within two or three days, and no one can be called who knew or heard of the levies until the time the bonds are demanded.
All of the personal property being under the levy of the Sheriff, was in custodia legis, and no other officer had any right to seize and receive the same. See Ethridge vs. Edwards, 1 Swan, 426; 10 Peters, 400; 5 Mass., 271; 9 Dance, 378; 4 B. Mon., 241. The title of personal property levied upon, passes to the officer: Brown vs. Allen, 3 Head, 429.
Was the execution in the hands of the constable, ever, in fact, legally levied upon the personal property of the defendant in the execution?
By the English law, most clearly not: 1 Arch. Pr., 293; 1 Maule & Selw., 711; 5 Taunt., 198. By that law the officer would enter the premises upon *227 •which the goods were, and leave one of his assistants in possession of them, or would cause an inventory to he taken and remove them: Grwinne on Sheriffs, 210.
In the United States, it is necessary that the officer should see the goods, and in some manner assert his title, by virtue of his execution: Beekman vs. Lansing, 3 Wend., 446. A proclamation of a levy upon goods locked up, but not in sight, has been held not to be a good levy: Haggerty vs. Wilber, 16 Johns, 288. They must be subjected to his control, so as to touch or remove them, if he wishes: Odeane vs. Colby, 2 N. H. Rep., 66; 16 John., 288.
It is not sufficient for him to tell the defendant that he holds the execution, and the goods are subject to his control, if he does not take action: Westerveit vs. Pinkney, 14 Wend., 124. Nor, if he goes to the defendant’s house with the execution in his pocket, and fails to apprise the defendant that he has come to levy upon his goods: 3 Wend., 446; 19 Wend., 497; 23 Id., 492.
Making a note of the levy on the back of the execution, with the property in sight, in the presence of the defendant, is sufficient: 1 Swan, 426; Mass vs. Moore, 3 Hill, S. C., 276; 23 Wend., 490.
The officer holding the execution should assert a dominion over the property, under authority of the ex ecution, and so interfere with the goods, as that, if he had no execution or other right, the act would amount to an actual or constructive trespass: 5 Cowen, 326; 7 Id., 735; 8 Wend., 610; 10 Ida., 349; 12 Id., 39.
The alleged levies of the constable, in this case, *228 even admitting the property to he leviable, did not amount to a legal levy in law. Those having possession of the goods did not know or hear of it; they asserted no dominion or control; the goods were sold .from day to day, openly and publicly, to customers, from the store, until conveyed in trust.
Such being the condition of the property at the time of the execution of the delivery bonds, and such the condition of the alleged levies, we do not think these sureties were fairly dealt with in procuring them to go upon the bonds.
There can be no doubt, we think, that they executed the bonds for the delivery of the property, with a confident belief that there had been a levy previous to the conveyance in trust, and superior to it in point of law; and advantage was taken of this belief, and they induced to sign the bonds, thereby. This Court decided in the case of Johnson & Taylor vs. Iney, MS., that, “The- contract for suretyship imports entire good faith and confidence between the parties, in regard to the whole transaction. Any concealment of material facts, or any express or implied misrepresentation, or undue advantage taken of the surety, by the creditors, (or his agent,) either by surprise, or by withholding proper information, will, undoubtedly, furnish a sufficient ground to invalidate the contract.”
And, we think that this case falls clearly within this principle; and,, therefore, reverse the decree of the Chancellor dismissing the bill, and decree that the injunction be perpetuated.