## WILLIAM CAHN ET AL. v. J. W. PERSON.

1. JUDGMENT. *Lien. Its operation.*
   A judgment-lien operates in favor of the creditor against the debtor, his assignees, and purchasers under him, so as to defeat subsequent sales and encumbrances of any property to which the lien has attached.

2. SAME. *Lien. Money, how affected thereby.*
   Although money is liable, by statute, to seizure under execution, no lien attaches to it till the seizure thereof. Because of its current character and the impossibility of identifying it, the law gives no judgment-lien upon it.

3. CHANCERY. *Property converted into money by order of court. Effect as to liens.*
   Where a court of equity takes charge of property, at the suit of a party having a claim thereon, it will keep alive all the encumbrances upon the property, and give them their original priorities. And if the property is converted into money by order of the court, and under the sanction of law, the money becomes the representative of the property, and is held as a fund to respond to all the liens and charges which existed against the property, in the order of their priority. The conversion in such case confers no right, and impairs none. Its only effect as to claims against the property is to withdraw the contestation from the property, and transfer it to the money.

4. EXECUTION. *Property in possession of officer. Levy of a second writ, how made.*
   While one officer is in possession of property upon which he has levied an execution or attachment, another cannot make a valid levy of another writ on the same property, but the officer having the custody of the property may make a second levy, and the reception by him of the second writ whilst the first is in his hands operates as a constructive levy upon all the property in his possession by virtue of the first writ.

APPEAL from the Chancery Court of Claiborne County.

Hon. U. M. YOUNG, Chancellor, specially presiding, Hon. T. Y. Berry being disqualified.

The case is sufficiently stated in the opinion of the court.

*E. S. Drake*, for the appellants.

1. A court of chancery has no jurisdiction to enforce a judgment-lien, and to appropriate either property or a fund to the satisfaction of the judgment. The judgment-lien is a creature of the statute, and must be enforced in the manner provided by sects. 830 and 837 of the Code of 1871. *Brown Beatty*, 5 Geo. 227.

2. A judgment-lien which has attached to property does not follow the proceeds thereof into the hands of a third party. *Conrad* v. *Atlantic Ins. Co.*, 1 Pet. 442 ; *Dozier* v. *Lewis*, 27 Miss. 683 ; *Walton* v. *Hargrove*, 42 Miss. 26 ; *Westmoreland* v. *Wooten*, 51 Miss. 825 ; *Cloud* v. *The State*, 53 Miss. 662.

3. Equity will not afford relief to a party who has a right and is without a legal remedy, if he once had such remedy and neglected to enforce it. *Finney* v. *Harris*, 1 Geo. 36 ; *Moody* v. *Harper*, 3 Geo. 599. Property cannot be divested of a lien by a judicial sale, unless the holder of the lien is a party to the proceedings of sale. *Bank of Manchester* v. *Coroner of Yazoo*, 6 How. 534. The appellee had his legal remedy against the property by a levy and sale ; and, having neglected the opportunity to enforce such remedy, he cannot now invoke the aid of equity.

*J. D. Vertner*, for the appellee.

1. The property being *in custodia legis*, the sheriff properly refrained from levying the appellee's execution upon it. *Wiswell* v. *Sampson*, 14 How. (U. S.) 52 ; *Langdon* v. *Lockett*, 6 Ala. 727 ; *Glenn* v. *Gill*, 2 Md. 1 ; *Field* v. *Jones*, 11 Geo. 413.

2. Cahn cannot claim the fund as an innocent purchaser, for he had notice by the suit of *Burnet* v. *Russum* that it was derived from property on which Person had a lien.

3. The appellee has a clear and undeniable right, " recognized and protected by our municipal jurisprudence," and, being without a " full, adequate, or complete remedy at law," is entitled to the interposition of a court of equity. 1 Story's

Eq. Pl., sect. 33; Coop. Eq. Pl. 128; Mitf. Eq. Pl. (by Jeremy) 111.

4. The mere receipt by the sheriff of a subsequent execution operates a constructive levy upon all property in his possession under a prior writ. Freem. on Ex., sect. 135; 1 Hill, 559; 4 Hill, 160. And the fund realized from the sale of this property may be considered as constructively made for the second writ.

SIMRALL, C. J., delivered the opinion of the court.

John Burnet had caused five mules and twenty-six bales of cotton to be taken possession of by Smith, then sheriff, to satisfy a demand which he preferred against W. H. Russum, founded on the Agricultural Lien Statute of 1867. The chancellor, by interlocutory order, directed the property to be sold, and the proceeds to be held by Smith, to abide the final decree. The sale of the mules was made on the seventh day of June, and of the cotton on the 7th of August, 1871.

J. W. Person, the complainant, is the beneficial owner of a judgment recovered against Russum and another, on the 15th of July, 1871, which was enrolled on the 18th of the same month, on which day a *fieri facias* was issued and placed in the hands of the sheriff. The sheriff, supposing that he could not levy on the cotton, subordinate to such rights as Burnet had acquired by proceedings under the sequestration writ and seizure, returned the execution *nulla bona*. In 1873, Person caused a garnishment summons to be issued and served on Smith; to which he answered that Russum had assigned his interest in the sum derived from the sale of the cotton to Cahn, and that he was not indebted to Russum on any other account.

In 1872, a final decree was made in Burnet's suit, which declared that he had not established his demand against Russum. Smith was directed to pay the money to Russum, and the bill was dismissed.

Subsequently, Cahn, assignee of Russum, moved in the Chancery Court against Smith and his sureties for a judgment

and damages for failing to pay over the money.    To that pro-
ceeding Person, by petition, asked to be made a party, that he
might propound his claim in opposition to Cahn, which was
allowed.

It is not alleged in the bill what disposition was made of the
garnishment suit.

In this posture of the contestation, Person filed an original
bill in chancery, fully disclosing the matters recited, and claim-
ing a superior right to the money to Cahn, the assignee of
Russum.   The demurrer puts to the test that pretension, as
does also the motion to dissolve the injunction.

A judgment-lien operates in favor of the creditor against
the debtor, assignees, and volunteers, so as to override sales,
incumbrances, or interests acquired to the property to which
the lien attached, subsequent to the judgment.    *Conrad* v.
*Atlantic Ins. Co.*, 4 Pet. 291.

It is this paramount right to have satisfaction which gives it
force and value, and distinguishes it from most of the liens in
the common law.    A court of chancery may come to its aid,
and remove out of the way fraudulent contrivances which tend
to defeat or impair it.

When satisfaction cannot be obtained by legal process, that
court will lay hold of those interests in property denominated
equitable assets, and will subject them to satisfaction; but not
upon any idea of a lien of the judgment, for in such case the
creditor acquires a priority by filing the bill.    *Partee* v.
*Mathews*, 53 Miss. 146; *Fleming* v. *Grafton*, 54 Miss. 83,
and cases there cited.

If one purchases property from the judgment-debtor, the
creditor can deprive him of it by an actual levy under process.
Money, under the statute, is liable to seizure under execution,
but the lien *begins* from the seizure, and not from the date of
the judgment.    The law does not affix a lien to things so
fugitive, which circulate as currency, and are so impossible to
identify.    Person had no lien on the money in Smith's hands.

The right of the complainant does not rest upon that ground. His contention is that he had a *lien* on the cotton before it was converted into money, under the order of the Chancery Court; and that this lien was dormant, or rather that he could not energize it by an actual levy and sale, for that would have withdrawn the property from the custody of the Chancery Court, where it rightfully was, and might have resulted in depriving Burnet of the fruits of success in that suit. Both the sequestration writ and the execution were in the hands of the same officer. It would not have been admissible for the sheriff to have done more than indorse a levy on the execution, subordinate to the other writ. He could not have abandoned the possession acquired under Burnet's writ, and have resumed it under the execution. To have levied at all would have been purely constructive. It would not, in the least, have interposed an obstacle to the interlocutory order and sale. That would have taken place in spite of the levy.

It is difficult to point out what precise advantage the judgment-creditor would have got by causing an indorsement of a levy on the writ. It would have amounted to no more than an assertion of a right to the cotton if Burnet failed.

The rule in a court of equity, where it takes charge of property at the suit of a party who has a claim upon it, is to keep alive all the incumbrances upon it, and give them their original priorities. In this instance, the court, whilst the property was in the custody of its officer, converted it, as was allowed by the statute of 1867, into money. Before that transmutation was made, the judgment-lien took effect upon it. When money became the representative of the cotton-bales, it was held by the sheriff as a fund to respond to all the liens and charges which existed against the cotton. The interlocutory order and sale was made to prevent deterioration, expense, and risk incident to keeping the cotton until the suit (uncertain as to duration) might terminate. It conferred no right, nor did it impair any, which existed against the property.

The chancery sale was made on account of whom it might concern. The effect was, to withdraw contestation from the cotton and transfer it to the money.

The lien which Person had was suspended, and remained in abeyance until the court lost control of the fund.

By the levy of an execution or attachment, the officer acquires a special property in the goods, — the right of control and possession. This is necessary, that he may sell and deliver to the purchaser. Whilst he thus holds possession, the property is esteemed as in the custody of the law. Hence, the preponderant current of authority is, that another officer cannot, under another execution or attachment, make a valid levy. 15 Pa. St. 144; 10 Mo. 149; 22 How. (U. S.) 583; 4 B. Mon. 241. It may be allowable in this State for the officer who has the custody to make a second levy, which does not necessitate a change of possession.

As a necessary sequence of that principle is the further one that the receipt of a subsequent writ, whilst the first is in his hands, operates a constructive levy on all property in his possession by virtue of the first. *Van Winkle* v. *Udall*, 1 Hill, 559; *Birdseye* v. *Ray*, 4 Hill, 160; Freem. on Ex., sect. 135.

If it were otherwise, a *fieri facias* delivered to the sheriff after he had made a levy would give no right of satisfaction out of the property. So, where a court of chancery impounds property at the suit of a creditor who asserts a charge upon it, the rights of other creditors who have liens are protected.

Person brought his bill before the trustee of the law had parted with the fund.

Cahn is chargeable with notice of the chancery suit and of the judgment owned by Person; he therefore occupies no higher ground than Russum, his assignor. Person has the same equity on the fund that he had on the property, which is older than, and paramount to, that of Cahn.

The decree of the chancellor is affirmed, overruling the motion to dissolve the injunction, and the demurrer to the bill.