HENRY, Ins. Com'r, *et al. v.* ALEXANDER *et al.*

[94 South. 846. No. 22737.]

1. LICENSES. *Privilege tax on premiums collected by life insurance companies held not to create lien for tax imposed.*

Under section 2629, Code 1906, and the amendments thereto, the tax imposed thereby on the premiums collected by fire insurance companies is merely a form of privilege tax imposed for the privilege of engaging in the business of insuring property in this state, the amount of the tax being measured by the gross, less return, premiums collected, and this section does not create a lien for the tax imposed and does not require that the amount of the tax shall be set aside out of the premiums collected as a trust fund in the hands of the companies.

2. LICENSES. *Law providing lien on property assessed for taxation held not applicable to privilege tax on insurance companies.*

Section 4255, Code 1906 (section 6886, Hemingway's Code), providing that taxes assessed on lands or personal property shall be a lien upon and bind the property assessed from the 1st day of February of the year in which the assessment is made, has no application to the tax imposed by section 2629, Code 1906, and amendments thereto, on insurance companies for the privilege of engaging in the business of insuring property in this state, and under the statutes of this state no lien exists for the collection of privilege taxes before the seizure of the property of the person or corporation liable therefor.

3. TAXABLE. *State has no preferential right in collection of taxes in absence of statute.*

In this state, in the absence of statutory or constitutional authority, the state, as sovereign, has no preferential right in the collection of taxes.

HON. V. J. STRICKER, Chancellor.

APPEAL from chancery court of Hinds county.

Suit by T. M. Henry, Insurance Commissioner, and another, against Chalmers Alexander and others, receivers. From a decree for defendants, plaintiffs appeal. Affirmed.

*George Butler,* for appellants.

*Teat & Potter* and *Clayton D. Potter,* for appellees.

COOK, J., delivered the opinion of the court.

In December, 1920, by an attachment in chancery, the state revenue agent instituted suit against a large number of stock fire insurance companies doing business in the state of Mississippi for violations of the anti-trust laws of the state of Mississippi, seeking to restrain the defendants from further violations of these laws, and to recover penalties for such alleged violations. The resident agents of the defendant companies were made parties defendant for the purpose of subjecting to complainant's demand any and all sums of money owing by these local agents to any of the defendant companies, and also all money, choses in action, property, or effects of the defendant companies in the hands of such resident agents. The defendant companies appeared and answered the bill, and the resident agents also filed answers admitting that they then had in their possession certain sums of money belonging to the various defendant companies, but failing to fully answer the attachment writ in other respects. Thereupon the revenue agent filed a petition for the appointment of receivers, setting up the fact that the defendant companies were withdrawing their funds and property from the state.

On February 7, 1921, before the petition for the appointment of receivers had been acted upon by the court, the state, acting by T. M. Henry, Insurance Commissioner, and Frank Roberson, Attorney General, filed an intervention in the said suit of the revenue agent averring that the defendant insurance companies had been admitted and licensed to transact the business of fire insurance in the state under the provisions of chapter 69, Code of 1906, and had transacted such business during the last six months of 1920, and had collected various premiums from such business from residents of the state on property located within the state; that under the provisions of section 2625, Code of 1906, the said defendant insurance companies were required, within the first thirty days of January, 1921, to make, under oath, a full and correct statement of the

amount of the gross receipts derived from the insurance business obtained from residents of the state or on property located therein during the preceding six months, and, within the first fifteen days of February, to pay to the Insurance Commissioner two and three-fourths per centum of their gross, less return, premiums as taxes; that said insurance companies had failed to make the required report before January 31, 1921, and had notified the said Insurance Commissioner that they would refuse to pay such taxes except out of the premiums in the hands of their local agents in the state of Mississippi; and further averring that said companies had no property in the state of Mississippi except the money due them by their local agents; that said companies intended to withdraw from the state, leaving no property within the state out of which these premium taxes could be collected; that the said funds in the hands of the local agents were under attachment in the suit of the revenue agent; that the revenue agent was asking that a receiver be appointed to take charge of and hold said funds; that the state had a first and prior claim upon all funds and property of said insurance companies in the state of Mississippi for the satisfaction of said taxes; that the state had this prior claim by reason of its sovereign and prerogative right, and also under and by virtue of the statutory provisions of the state in relation to tax liens, and for this reason was entitled to have said taxes paid out of the funds then in the state in preference to all other obligations. The petition then prayed that the defendant insurance companies be required to discover the amount of their gross earnings, less return premiums, and to make the report thereof as required by law; that a receiver be appointed to collect and preserve said funds; that the court adjudge these taxes to be a preferential and prior claim to be paid out of such impounded funds. About the time of the filing of these intervention proceedings, the application of the revenue agent for the appointment of a receiver was heard and receivers were appointed.

On the 16th day of February, 1921, the state, by the Insurance Commissioner and the Attorney General, filed an amendment to its original intervention proceedings reiterating the matter set forth in the original proceedings, and in addition alleging that the said insurance companies had failed to pay said taxes on or before February 15, 1921, and that the time for such payment had expired, and praying that the receivers be directed to first pay said taxes out of any funds that might come into their hands, and also praying for judgment against the defendant insurance companies.

Subsequently, the insurance companies, defendants to the intervention proceedings, filed their answer thereto and filed with the Insurance Commissioner the reports required by section 2625 of the Code of 1906, and admitted their respective liabilities for such taxes.

On June 8, 1921, the state filed a petition against the receivers averring that they then had on hand belonging to said insurance companies a sum in excess of three hundred fifty thousand dollars, and reiterating the claim of preference and praying the court to direct the receivers to pay the taxes out of these funds. The court then entered an order directing the state to file with the receivers a separate statement of the taxes claimed to be due by each insurance company, and in pursuance of this order the state filed with the receivers these several statements.

Thereupon the receivers filed a bill inter-peading the state of Mississippi, the Insurance Commissioner, and the Attorney General, the revenue agent, and the several defendant insurance companies, and averring that they had a large sum of money in their hands belonging to the respective insurance companies; that the state, through its Insurance Commissioner and Attorney General, was asking that the premium taxes be first paid out of these funds; that the revenue agent was asserting a first lien thereon; that the receivers held the funds subject to the orders and directions of the court, and praying for directions as to the distribution of such funds.

The insurance companies filed an answer admitting the material allegations of the bill of interpleader and agreeing that the taxes owing to the state might be paid out of the separate funds then in the hands of the receivers. The state, by the Insurance Commissioner and Attorney General, filed an answer setting up at length the proceedings, hereinbefore mentioned, and the steps which it had taken to force the payment of said taxes, and again averring that it had a first and prior claim upon said funds under and by virtue of its sovereign power, and under and by virtue of the statutes relating to tax liens and payments, and propounded its claim to the funds in the hands of the receivers for approximately one hundred twenty-three thousand dollars. The revenue agent filed an answer setting up that he had a first and prior lien and claim upon said funds by reason of the attachment and garnishment proceedings hereinbefore mentioned.

The cause was submitted on the pleadings, and the court below entered a final decree adjudging that, by virtue of the attachment and garnishment proceedings, the revenue agent had a first and prior lien and claim upon the funds in the hands of the receivers to satisfy the penalties claimed in the said suit against the insurance companies, and directing the receivers to hold the funds as directed by the decree in the anti-trust suit. From this final decree the state, by its Insurance Commissioner and Attorney General, prosecutes this appeal.

The sole question presented for decision is whether the lien of the state created under and by virtue of the attachments in the revenue agent's anti-trust suit is subordinate to the lien or right of priority of the state for the payment of the premium taxes due by the defendant insurance companies.

If the state of Mississippi, acting by the Insurance Commissioner and the Attorney General, has a superior lien or right in its claim for these premium taxes to that acquired under and by virtue of the attachment, it must be-

derived either from its sovereign power or from statute, and in the discussion of the question involved appellant's contentions are presented under three heads; the first contention being that—

"This tax was assessed directly by the Legislature upon the premium receipts collected by the insurance companies; that insurance companies held two and three-fourths per centum of these receipts as trustee for the state to be paid over as directed by the Legislature, and that the revenue agent acquired no liens upon these particular funds by virtue of the attachment and garnishment proceedings."

Under section 2625, Code of 1906, insurance companies are required to make, within the first thirty days of January and July of each year, a full report to the Insurance Commissioner of the amount of the gross receipts derived from the insurance business in this state during the preceding six months, and to pay the taxes imposed by section 2629, Code of 1906, within the first 15 days of February and August of each year. Section 2629, Code of 1906, after providing for the payment of premium taxes by life insurance companies, further provides that "all other than life insurance companies shall pay a tax of two per centum on gross, less return, premiums," and by section 31, chapter 104, Laws of 1920, this premium tax was increased to two and three-fourths per centum; the provision of this act being that "all other than life insurance companies shall pay a tax of two and three-fourths per centum on gross earnings, less earned returned premiums."

The tax provided for in these statutes is in the nature of an excise tax imposed for the privilege of engaging in the business of insuring property in this state, but we do not think it was the intention or purpose of these statutes that, at the time the premiums were collected, this specific amount should be carved out and held by the companies as a trust fund until the time fixed for the payment of the taxes. This tax is merely a form of privilege tax, and the statute imposing it does not attempt to create a lien

131 Miss.—38

for its collection, or to set aside out of the premiums collected the amount thereof as a trust fund in the hands of the companies; but it merely creates a liability therefor measured by the gross premiums collected. It is not strictly speaking a tax on the premiums collected, but the premiums collected are the measure of the taxes that such companies must pay for the privilege of doing business in the state. The taxes imposed by this statute are a liability due and payable by the companies at the end of each period of six months, but the companies are not required to set aside out of the premiums as collected the amount of the tax and hold the same as a trust fund for the payment of these taxes.

The next contention of appellants is: "That the statutes of this state make the taxes in question a lien against the funds of the insurance companies in the hands of the agents in this state, entitled to preferential payment and with rights superior to those acquired by the revenue agent under the attachment and garnishment proceedings."

We understand the contention of appellants to be that the tax here involved partakes of the nature of an *ad valorem* tax, and that a lien or preferential claim therefor is created under section 4255, Code of 1906, section 6886, Hemingway's Code, which provides that taxes assessed on lands or personal property shall be a lien upon and bind the property assessed from the 1st day of February of the year in which the assessment shall be made, and also declares the same to be a preference over all judgments, executions, incumbrances, or liens, whensoever created. Under this statute, on all real or personal property assessed for taxes, there is created a lien which has preference over all other liens whensoever acquired; but we do not think this statute has any application to the tax here involved. This is not a tax assessed upon any specific property, but is a form of privilege tax imposed upon insurance companies doing business in the state for the privilege of engaging in the business, the amount of the

tax being measured by the gross, less return, premiums collected, and it has been expressly decided by this court that under the statutes of this state no lien exists for the collection of privilege taxes before the seizure of the property of the person or corporation liable therefor. *Robertson* v. *Greenwood Lumber Co.,* 118 Miss. 769, 79 So. 820. Since we are of the opinion that the statute imposing this tax does not require that the amount of the tax shall be set apart when collected and held as a trust fund, there is an additional reason why no lien attached before seizure. The premiums collected by the insurance companies, and which are here sought to be subjected to the payment of these taxes, are in the form of money, and, as was held by this court in *Cahn* v. *Person,* 56 Miss. 363 :

"Money, under the statute, is liable to seizure under execution, but the lien begins from the seizure, and not from the date of the judgment. The law does not affix a lien to things so fugitive, which circulate as currency, and are so impossible to identify."

The third and last contention of appellants is that— "Independent of the statute, taking into consideration the nature of the obligation and the essential characteristics of the tax, the state under and by virtue of its sovereign power has a first claim upon these funds for the payment of the taxes, and that the claim of the Revenue Agent for the alleged penalties is postponed."

In many jurisdictions the right of priority of payment of taxes is regarded as one of the prerogatives of the sovereign power, but in this state it has been held expressly that in the absence of statutory or constitutional authority the state has no preferential rights under and by virtue of its sovereign power. This doctrine was announced in the case of *Potter* v. *Fidelity & Deposit Co.,* 101 Miss. 823, 58 So. 713, where the court said:

"In discussing this case we may state that, if the state has any priority over the general creditors, it must obtain it by virtue of some statute of the state or constitutional

provision. In the absence of statutory or constitutional authority, the state, as sovereign, has no preferential rights in this state. This was settled as the law of this state when the case of *Shields* v. *Thomas,* 71 Miss. 260, 14 So. 84, 42 Am. St. Rep. 458, was decided. But if the court had not already set at rest this question, we would have no hesitancy in now declaring this to be the law. Some courts have held the reverse of this (see *Booth* v. *State of Georgia,* 131 Ga. 750, 63 S. E. 502, and note in 36 Cyc. p. 871), but we adopt the authorities which deny the state priority on any idea of sovereignty."

We conclude, therefore, that the judgment of the court below should be affirmed.

In the consideration of the question involved we have pretermitted any discussion and consideration of the fact that, on this appeal, it is the state that is asserting a claim of priority in each instance, on the one hand, for taxes; on the other, for penalties.

*Affirmed.*